321 So.2d 577 (1975)
Toby Allen HASSBERGER, Appellant,
v.
STATE of Florida, Appellee.
No. 74-886.
District Court of Appeal of Florida, Fourth District.
October 10, 1975.
Rehearing and Certification Denied November 12, 1975.
*578 Alan E. Strober of Sigman, Speigel, Flower & Strober, Orlando, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Frank B. Kessler, Asst. Atty. Gen., West Palm Beach, for appellee.
WALDEN, Judge.
The question crucial to this case is:
Can the identity (actual name and address) of a confidential informant be kept secret when the trial court finds (by means of an in camera proceeding on the subject), that the informant's personal safety is at stake  when that informant appears as a witness in the criminal proceeding?
The defendant here complains that he was denied his right to cross examine when a witness-confidential-informant was permitted to testify without revealing his real name and address. The trial court held an in camera proceeding to determine the validity of the witness' claim of personal danger and concluded that such danger did exist, and that other state investigations would suffer if the witness' identity was revealed. The trial court determined the *579 witness' identity could be kept secret. We disagree and reverse.
There are two primary reasons for courts to permit an informant's identity to remain undisclosed:
(1) So that the informer may continue in his activities without losing his cover, thereby serving state and public interests;
(2) So that the informer may be kept free of reprisals, thereby serving state and public interests by encouraging citizens to reveal information to proper authorities.[1]
There are four primary reasons for a defendant to request the identity of an informant:
(1) To prove probable cause for a warrant when an informant's tip provides a portion of the basis for the warrant's issuance.
(2) To prove probable cause for a warrantless arrest and search when an informant's tip provides a basis for police action in that regard.
(3) To permit a defendant to properly prepare his defense; a defendant alleging entrapment may want an informant to testify, or may want to delve into the occasion surrounding his arrest; a defendant may want to have the opportunity to question the informant to see if informant has testimony that would aid defendant's cause.
(4) To permit a defendant to adequately cross-examine and impeach an informant who will be a witness against him in trial proceedings. This desire is in accord with a defendant's sixth amendment right to confront witnesses against him.
It is important not to confuse the statement of one court dealing with a request for identity under defendant's reasons one and two, with the more crucial request under reason four.
In Florida a defendant's request for identity under the stated reasons one and two are often denied. In Treverrow v. State, 194 So.2d 250 (Fla. 1967), the Supreme Court held that an informant whose tip led to a search warrant did not have to be revealed because the warrant was otherwise bolstered by personal observation of a police officer. The burden in that instance is heavy on the defendant:
"the burden is on the defendant claiming an exception to the rule to show why an exception should be invoked."
This opinion also encompassed, partially, the stated reason three, as it noted that disclosure of the informant would not aid in the defendant's defense.
In Harrington v. State, 110 So.2d 495 (Fla.App. 1st 1959), a similar decision was had concerning an informant's identity when his lead led to a search warrant. Likewise, State v. Katz, 295 So.2d 356 (Fla.App. 4th 1974).
In conclusion on these reasons one, two and three, Florida authority is in accord with Federal authority on informant identity when informant gave a tip leading to a warrant, or a warrantless arrest and search and where defendant wants informant testimony. U.S. v. Comissiong, 429 F.2d 834 (2d Cir.1970); U.S. v. Carneglia, 468 F.2d 1084 (2d Cir.1972); U.S. v. Gibbs, 435 F.2d 621 (9th Cir.1970); U.S. v. Malo, 417 F.2d 1242 (2d Cir.1969); U.S. v. Waters, 461 F.2d 248 *580 (10th Cir.1972); U.S. v. Winters, 420 F.2d 523 (3d Cir.1969); U.S. v. Jackson, 384 F.2d 825 (3d Cir.1967); U.S. v. Danesi, 342 F. Supp. 889 (D.Conn. 1972) [an in camera investigation used to see if informant testimony would help defendant]; U.S. v. Hurse, 453 F.2d 128 (8th Cir.1972) [in camera proceeding to see if informant tip was probable cause]; U.S. v. Toombs, 497 F.2d 88 (5th Cir.1974); U.S. v. Alvarez, 469 F.2d 1065 (9th Cir.1972); Bruner v. U.S., 293 F.2d 621 (5th Cir.1961); U.S. v. Davis, 487 F.2d 1249 (5th Cir.1973).
It is most interesting to realize that those authorities dealing with a request by a defendant that informant testify take for granted that, if informant testified, his real identity should or would be revealed. See Roviaro v. U.S., 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); Spataro v. State, 179 So.2d 873 (Fla.App. 2nd 1965); and Ricketts v. State, 305 So.2d 296 (Fla.App. 4th 1974) [in which an informer had to be identified when he was an active participant and the only witness in a position
"to amplify or contradict the testimony of the witnesses for the State."];
Therefore it follows that when a witness testifies for the state, the burden shifts to the state to prove reasons why defendant should not be able to cross examine a witness as to his or her real name and address. There must be some strong state interest. With respect to that state interest, the committee notes to Rule 510 of the Federal Proposed Rules of Evidence, stated:
"`If the informer becomes a witness for the government, the interests of justice in disclosing his status as a source of bias or possible support are believed to outweigh any remnant of interest in nondisclosure which then remains. See Harris v. United States, 371 F.2d 365 (9th Cir.1967), in which the trial judge permitted detailed inquiry into the relationship between the witness and the government.'" (Emphasis supplied.)
and the proposed rule provided in part:
"(c) Exceptions.
"(1) Voluntary Disclosure; Informer a Witness. No privilege exists under this rule if the identity of the informer or his interest in the subject matter of his communication has been disclosed to those who would have cause to resent the communication by a holder of the privilege or by the informer's own action, or if the informer appears as a witness for the government." (Emphasis supplied.)
However, Rule 510 has been deleted in a tentative draft of Federal Rule 5463, dated June 28, 1973, by the Criminal Justice Subcommittee of the House Judiciary Committee. 13 Crim.L.Rep. 3285. See 8 Moore's Federal Practice § 16.06, p. 1694, and supp. 117 (1974 and 1975).
There are no Florida cases which deal directly with a witness who testifies at the behest of the state, but remains unidentified. The Federal cases dealing with this precise problem are limited, but there has been a response to the problem from the U.S. Supreme Court in Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), in which a state witness who was the principal prosecution witness was required  on cross examination  to reveal his real name and address:
"In the present case there was not, to be sure, a complete denial of all right of cross-examination. But the petitioner was denied the right to ask the principal prosecution witness either his name or where he lived, although the witness admitted that the name he had first given was false. Yet when the credibility of a witness is in issue, the very starting point in `exposing falsehood and bringing out the truth' through cross-examination must necessarily be to ask the *581 witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.
* * * * * *
"... In this state case we ... hold that the petitioner was deprived of a right guaranteed to him under the Sixth and Fourteenth Amendments of the Constitution." 88 S.Ct. at 750-751.
A concurrence by Justices White and Marshall indicated that, according to Alford v. U.S., 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), questions
"which tend merely to harass, annoy or humiliate a witness may go beyond the bounds of proper cross examination."
Courts interpreting this clause have included in this genre questions that would tend to endanger the personal safety of the witnesses. This statement in the concurring opinion to Smith v. Illinois, supra, has resulted in a plethora of Federal Circuit cases which, in varying degrees, protect a government witness: U.S. v. Crockett, 506 F.2d 759 (5th Cir.1975) [address of witness concealed]; U.S. v. Smaldone, 484 F.2d 311 (10th Cir.1973) [address concealed]; U.S. v. La Barbera, 463 F.2d 988 (7th Cir.1972) [address concealed]; U.S. v. Ellis, 468 F.2d 638 (9th Cir.1972) [name and address concealed]; U.S. v. Palermo, 410 F.2d 468 (7th Cir.1969) [address concealed, although the court included the statement that: "... where there is a threat to the life of the witness, the right of the defendant to have the witness' true name, address and place of employment is not absolute."]; U.S. v. Varelli, 407 F.2d 735 (7th Cir.1969) [address concealed]; U.S. v. Crovedi, 467 F.2d 1032 (7th Cir.1972) [present names (new aliases) and addresses concealed]; see U.S. v. Alston, 460 F.2d 48 (5th Cir.1972) and U.S. v. McKinley, 493 F.2d 547 (5th Cir.1974) [in which federal agents who were witnesses had addresses and aliases protected]. But simply to aver that a witness is in danger does not automatically protect him from being identified. There are various policy statements made by the courts, designed to show that a defendant must be granted a full right to cross examination. These statements include the following points:
(1) The witness must be properly placed in his environment so defendant can impeach. In these cases the address of the witness is usually the only thing not revealed.
This point is crucial. In Alford v. U.S., supra, the Supreme Court held that a witness on cross had to answer the question of what his address was because it was an appropriate preliminary toward identifying the witness in his environment. In U.S. v. Smaldone, supra, the Circuit Court held the address of a witness was not necessary when:
"In the case at bar then there was no lack of knowledge on the part of the defendant as to the background of the witness Nocenti. Counsel was allowed to cross-examine him in minute detail. Thus, there was not present the usual necessity to bring out the address of the witness; and the defendant was not deprived of knowledge of where he lived and what his business was as was said in Alford."

In U.S. v. Smaldone, supra, the witnesses had been relocated by the government to protect them, but the witness could be placed in his environment because his former address was available. In U.S. v. La Barbera, supra, an in camera inspection was had of a witness' credentials, prior addresses, and his testimony was subject to extensive cross examination. The 7th Circuit held that his present address didn't have to be revealed on cross-examination because:
"The record shows that Barr's testimony was the subject of extensive cross-examination *582 by the defendants; although this is not dispositive of the issue raised on appeal, it does suggest that any prejudice to defendants was minimal. The disability inherent in the trial court's ruling was clearly outweighed by the necessity of protecting the witness Barr." Id. at 990.
In U.S. v. Crovedi, 467 F.2d 1032 (7th Cir.1972), certain witnesses had relocated their families and gotten new addresses, names and jobs. Those didn't have to be revealed. See also U.S. v. Palermo, supra; U.S. v. Varelli, supra; U.S. v. Saletko, 452 F.2d 193 (7th Cir.1971) and U.S. v. Crockett, supra. In these and other cases the address of a witness was concealed but not his real identity. In fact, in U.S. v. Palermo, the court said:
"Under almost all circumstances, the true name of the witness must be disclosed. Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). If the witness is located in a penal institution, this, too, must be disclosed. Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). A witness' prior address must also be disclosed if the witness does not intend to return to this location. United States v. Varelli, 407 F.2d 735 (7th Cir. 1969). If the trial judge concludes that the defendant does not have a right to the exact address of the witness and his place of employment, the defendant is entitled to ask any other relevant questions which may aid the jury in weighing the witness' credibility." (Emphasis supplied.)
A second reason to permit identification or address concealment:
(2) The witness' testimony is marginal and not crucial to the state's case.
In U.S. v. Ellis, supra, the court stated,
"After denial of a motion to suppress marijuana which Ellis sold to an undercover agent in the presence of concealed police officers, Ellis waived trial by jury and was convicted under 21 U.S.C. § 841(a)(1). At the trial, Ellis attempted on cross-examination to elicit the correct name, residence, and occupation of the agent-purchaser. He appeals on the sole ground that the district court erred in restricting his effort to break the agent's `cover.' The argument is without merit." 468 F.2d at 639. (Emphasis supplied.)
and held:
"... we conclude, in view of the marginal significance of the witness's testimony in this case, that no prejudice to the defendant can be shown." (Emphasis supplied.)[2]
See also U.S. v. McKinley, 493 F.2d 547 (5th Cir.1974). This reasoning is faulty. If a witness' testimony is only marginal (this witness', however, was more than mere surplusage) the state has no reason at all to abridge a defendant's Sixth Amendment rights.
There are very few cases that permit the name of a witness to be concealed, and when the name is concealed, the witness is usually a government agent (as opposed to an informer); U.S. v. Ellis, supra; U.S. v. McKinley, supra, or the names are newly adopted aliases. It does not pattern that witnesses may be automatically kept anonymous if they are in danger. In fact, the very nature of an informant's business subjects him to danger and it would be most unfortunate to hold that all informants might testify, but remain unidentified. That procedure would totally contravene the Sixth Amendment and be akin to the dreaded star chamber proceedings. How would witnesses then be protected  would they testify from behind a screen? That is unthinkable. The right of a defendant to cross examine is crucial, and though extensive federal case law supports the proposition that an address may be concealed, the authority for actually concealing a witness' *583 identity is slim; because the witness must be placed in his environment, his past and record must be available to the defendant. Smith v. Illinois, supra.
In our case the witness has not been ensconced in a new residence for his own protection, the defendant has not been able to place the witness in his environment, check for a record or for other credibility evidence. The fact that the trial judge in camera was informed of the witness' record and background does not suffice to place the witness in his environment for the benefit of the defendant.
Further, and most convincingly, this state has a rule of procedure analogous to the deleted Rule 510 of the Proposed Federal Rules of Criminal Procedure. That is Fla.R.Cr.P. 3.220(c)(2):
"(2) Informants. Disclosure of a confidential informant shall not be required unless the confidential informant is to be produced at a hearing or trial, or a failure to disclose his identity will infringe the constitutional rights of the accused." (Emphasis supplied.)
This rule clearly indicates that disclosure of a confidential informant shall be required if the informant is to be produced at trial.
In final tie-up, this decision and position will prevent defendants from being confronted by faceless witnesses, bringing charges and offering condemning testimony against defendants who are prevented by the court from exercising their Sixth Amendment right to confront and cross examine. The very life style of most confidential informants necessarily places them in danger of reprisals. Regardless, we cannot agree that, therefore, those informants should testify incognito at the expense of defendants. A contrary decision to the one we make here could eventually lead to the simple result that confidential informants may testify without being identified.
Further, it would be impracticable for a trial judge to assess in camera the levels of danger adequate to forestall the revelation of a witness' identity. Why? Because, as we have indicated, those charged with a crime automatically take a dim and potentially dangerous view of being informed against by their acquaintances.
For example, in the case at hand, the evidence at the in camera inspection showed only that (1) the informant has been followed by two young men (one of whom was tentatively identified as a relative of a co-defendant of Hassberger) when in the Orange County Courthouse; there was no hostility, or evidence they were armed, and (2) the co-defendant in the trial had been armed with a 25 caliber pistol when he was arrested. There was no evidence of specific threats or outward manifestations of any danger to the witness. The decision of the trial court was based simply on the danger which is generally understood to face undercover-informant witnesses.
As to the assertion that the defendant's Sixth Amendment rights were adequately protected by the trial court judge's unilateral in camera inquiry into the witness' background and record, we emphatically disagree. Such efforts, however well intended by the impartial arbiter, cannot substitute meaningfully for those of a competent defense counsel advocating for his client in the area of impeachment and credibility.[3] Moreover, there is no protection for defendant in the event that the trial court's inquiry into background is lacking or the responses are untruthful. We are reminded that the in camera inspection, here employed, found the prosecutors participating and defense counsel barred from such proceedings.
*584 The state's case should not be hinged upon nor bolstered by the testimony of a confidential informant witness whose identity remains a secret. If an informant is valuable to the state, then the state must balance his usefulness and his safety as against the disadvantage of not using him as a witness. Any other rule would contravene Fla.R.Cr.P. 3.220 and the rights of a defendant under the Sixth Amendment.
And so the mandate of Fla.R.Cr.P. 3.220, and the crucial consideration that defendant has been denied his right to meaningfully cross-examine a witness against him in contravention of the Sixth Amendment require reversal for a new trial with directions that the defendant be permitted to elicit the name and address of the informant-witness should the state choose to call him to the stand.
Reversed and remanded.
OWEN, J., concurs.
CROSS, J., concurs only in conclusion.
NOTES
[1] In the committee note to Rule 510 of the Federal Proposed Rules of Evidence the committee stated:

"Subdivision (a) The public interest in law enforcement requires that the privilege be that of the government, state, or political subdivision, rather than that of the witness."
[2] This opinion may have been influenced by the consideration, mentioned in 8 Moore's Federal Practice, § 16.04, supp. (1975), that there is some relevance to whether the witness is an informer or a narcotics agent.
[3] Notably, the in camera inspection of the witness' background revealed that he had, at one time, been adjudicated incompetent. The witness spent some five years in a mental institution and was adjudicated not guilty by reason of insanity on a charge of assault with intent to commit murder. This history of instability could have been used to impeach this witness, and had counsel for defendant known this witness' identity, that history could (and should) have been entered into evidence for that purpose.